IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN LEE BIRGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-769-RJD |
| | ) |
| VENERIO SANTOS, M.D., LANA | ) |
| NALEWAJKA, and WEXFORD | ) |
| HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | |

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Motions for Summary Judgment on the Issue of Administrative Remedy Exhaustion filed by Defendants Wexford Health Sources, Inc., Myers, Moseley, Godoyo, Delgado, Newcomb, and Wall (Docs. 151-154). Plaintiff filed Responses (Docs. 157 and 158) and Defendants Wexford and Myers filed a Reply (Doc. 164). The Court held a hearing on October 27, 2022. Summary judgment is granted in favor of Defendant Myers, Moseley, Godoyo, Delgado, Newcomb, and Wall. Summary judgment in favor of Defendant Wexford Health Sources, Inc. ("Wexford') is GRANTED IN PART AND DENIED IN PART. Wexford filed a Motion to Dismiss (Doc. 113) that is DENIED AS MOOT.

## Background

Plaintiff, an inmate of the Illinois Department of Corrections (IDOC), filed this suit *pro se* pursuant to 42 U.S.C. §1983 (Docs. 1, 47). Plaintiff alleged that Dr. Venerio Santos and Lana Nalewajka were deliberately indifferent to his severe back pain at Centralia Correctional Center, violating Plaintiff's Eighth Amendment rights (Docs. 1, 47). The Court recruited counsel for

Plaintiff who subsequently filed the First Amended Complaint, adding an Eighth Amendment claim against Wexford. Wexford contracts with IDOC to provide medical treatment for IDOC inmates (Doc. 47). Plaintiff alleged that Wexford maintains policies and/or practices that result in the delay or denial of necessary medical treatment for his chronic back pain.

Plaintiff filed a Motion for Preliminary Injunction on July 29, 2021, contending that Defendants had repeatedly delayed treatment necessary to alleviate his severe back pain. The Court held an evidentiary hearing on September 21, 2021 and ultimately granted the motion, entering the following preliminary injunction on September 30, 2021:

> Defendants are ORDERED to schedule and facilitate an appointment with Dr. Berry (or another pain management physician who practices with Dr. Berry). The appointment shall take place within 30 days of the date of this Order. If Dr. Berry (or another pain management physician who practices with Dr. Berry) has no available appointments within 30 days of the date of this Order, Defendants shall schedule and facilitate an appointment for Plaintiff on Dr. Berry's (or another pain management physician who practices at his clinic) first available date. Defendants shall provide a Notice to the Court that advises the Court of the outcome of that appointment, i.e., whether the doctor provided an injection for Plaintiff or otherwise recommended further treatment. Defendants are further ORDERED to arrange for a physician who is treating patients within the IDOC to evaluate Plaintiff for a walker for him to use at Centralia Correctional Center within 15 days of the date of this order. Defendants shall provide a Notice to the Court that advises the Court of the results of that evaluation.

(Doc. 81). Defendants subsequently filed their Notices of Compliance, informing the Court that Plaintiff was provided a walker and saw Dr. Berry on October 13, 2021. Dr. Berry recommended a "trial of Gabapentin and a seated walker with wheels" and a "follow-up with neurosurgery" if Plaintiff's condition did not improve (Doc. 89-1). After the visit with Dr. Berry, IDOC transferred Plaintiff to Pinckneyville Correctional Center (Doc. 91).

In January 2022, Plaintiff requested and the Court granted leave to file his second amended

complaint (Docs. 92 and 99). Plaintiff's Second Amended Complaint contains new claims against the following parties: Dr. Percy Myers, Joshua Moseley, George Godoyo, Jose Delgado, Leonard Newcomb, and Chad Wall. Defendants Godoyo, Delgado, Newcomb, and Wall were originally named as John Does and later identified by Plaintiff.

In the Second Amended Complaint, Plaintiff alleges that he was provided with a walker at Centralia Correctional Center ("Centralia), but no physician evaluated him for a walker (as the Court ordered). Moreover, the walker is large, heavy, bulky, and has no wheels or a seat (Doc. 100). Dr. Percy Myers prescribed gabapentin to Plaintiff, but discontinued all of Plaintiff's other pain medication (*Id*.). Plaintiff describes an incident at Centralia where he asked for his pain medication, and Sergeant Moseley told him he would not be "getting the f******* medication" (*Id*.). Sergeant Moseley then ordered Plaintiff into the hallway and slammed the cell door into him (*Id*.). Plaintiff laid down on the floor and Sergeant Moseley kneeled on his back to place handcuffs on him, further exacerbating Plaintiff's back pain (*Id*.). Moseley and Defendants Godoyo, Delgado, and Newcomb took Plaintiff to segregation (*Id*.; Doc. 119, ¶8(a)).

Two days later, Plaintiff was transferred to Pinckneyville Correctional Center ("Pinckneyville") and he alleges that Defendant Wall threatened him to plead guilty to assaulting Sergeant Moseley or he would be "lost in seg" (*Id*.; Doc. 119, ¶8(b)). Plaintiff pleaded guilty, spent 14 days in segregation, and was then released to general population (Doc. 100). At Centralia, Plaintiff had been housed in the healthcare unit where he was able to sleep on a gel mattress to alleviate his back pain (*Id*.). He has not been given a gel mattress at Pinckneyville, nor several other accommodations that were made for his back pain at Centralia (*Id*.). Plaintiff's Second Amended Complaint contains the following claims:

   Count I:  Deliberate indifference by Nalejawka and Santos

        Count II:        Deliberate indifference by Wexford

        Count III:       Deliberate indifference by Dr. Percy Myers

        Count IV:       Excessive use of force by Defendant Moseley

        Count V:        Retaliation by Wexford, Myers, Moseley, Godoyo, Delgado, Newcomb, and Wall

Count I in the Second Amended Complaint is identical to Count I in the First Amended Complaint. Count II in the Second Amended Complaint is nearly identical to Count II in the First Amended Complaint, except that Plaintiff alleges that Wexford's policies and practices continue to cause the delay and/or denial of his necessary medical treatment. Counts III, IV, and V in the Second Amended Complaint are all new claims.

Pursuant to 42 U.S.C. § 1997e(a), no §1983 action "shall be brought....until such administrative remedies as are available are exhausted." Defendants Myers, Wexford, Moseley, Godoyo, Delgado, Newcomb and Wall move the Court to grant summary judgment in their favor on the issue of exhaustion and dismiss all claims against them.[1]

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is

---

[1] Wexford did not raise the affirmative defense of administrative remedy exhaustion defense when it answered Count II of Plaintiff's First Amended Complaint.

made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

Where an inmate faces "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," his grievance is handled as an emergency. *Id.* § 504.840(a);

The Warden decides whether the grievance should be handled as an emergency, and if so, expedites processing of the grievance and responds to the offender. *Id.* § 504.840(b). If the inmate subsequently appeals the emergency grievance, the ARB also expedites its processing of the grievance. *Id.* § 504.850(f).

When an inmate grieves "issues that pertain to a facility other than the facility where the offender is currently assigned," he must submit the grievance directly to the ARB and bypass submitting it to the counselor and grievance officer at his current facility. *Id.* § 504.870(a)(4). This rule does not apply to grievances regarding medical treatment or personal property. *Id*.

Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before bringing suit in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). However, an inmate is only required to exhaust the administrative remedies that are available to him. *Lewis v. Washington,* 300 F.3d 829,833 (7th Cir. 2002). Administrative remedies are unavailable to an inmate when prison officials do not respond to his grievance(s). *Id*.

## Relevant Grievances

The parties submitted the following grievances for the Court's consideration.

**Grievance 4043-12-21, dated December 17, 2021 (Doc. 154-1, p. 7-11)**

Plaintiff submitted this grievance as an emergency to the Warden at Pinckneyville regarding Dr. Myers' decisions to stop Plaintiff's prescriptions. Plaintiff also grieved that he had needed to see a "spine specialist" and that he did not have the medical equipment that he needed to alleviate his back pain. The Warden at Pinckneyville received the grievance on December 17,

2021 and deemed it an emergency on that same date.

The grievance officer recommended that the grievance be denied on February 24, 2022, including a response from the Health Care Unit Administrator that described Plaintiff's current treatment plan. The Warden concurred with this recommendation on February 25, 2022. Plaintiff appealed the grievance to the ARB, who received the grievance on March 28, 2022 and denied the grievance because "the issue was appropriately addressed by the facility administration."

**Grievance dated December 17, 2021 (Doc. 157-1, p. 2)**

Plaintiff submitted a copy of this grievance to the Court; Defendants did not include it in their summary judgment documents. Plaintiff marked this grievance as an emergency. He described the disciplinary hearing at Pinckneyville, noting that it occurred on October 25, 2021 at approximately 12:05 p.m. He wrote that at the hearing, Defendant Wall read the disciplinary report to him and then told Plaintiff he would be "lost in seg for who knows how long" if he did not plead guilty to the disciplinary report. According to Plaintiff's written Response to Defendants' Motions for Summary Judgment, he never received a response to this grievance.

**Grievance 4100-12-21, dated December 20, 2021 (Doc. 154-1, p. 2-6)**

Plaintiff submitted this grievance as an emergency to the Warden at Pinckneyville regarding the incident with Defendant Moseley. The Warden at Pinckneyville received the grievance on December 23, 2021 and deemed it an emergency on that same date. In the grievance, Plaintiff describes the incident at Centralia where he asked for his pain medication, Sergeant Moseley told him he would not be "getting the f****** medication," and a physical altercation then ensued involving two other correctional officers. At the end of the grievance, Plaintiff writes "two days later they transfer me to Pinckneyville with a staff assault [charge]."

The grievance officer at Pinckneyville recommended that the grievance be denied on February 23, 2021, noting that she could not "address allegations against Sergeant Moseley because the incident transpired at Centralia."  The Warden concurred with this recommendation on February 24, 2021.  Plaintiff appealed the grievance to the ARB, who did not address the substance of Plaintiff's grievance because they received it on March 28, 2021-more than 30 days after the Warden's February 24, 2021 decision.

### *Pavey* Hearing

On October 27, 2022, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).  Plaintiff testified.  When asked by counsel for Wexford whether he had ever submitted a grievance that named Wexford, he answered "I filed so many I'm not real sure." When asked by counsel for the IDOC Defendants whether he had submitted grievances that named the Defendants Godoyo, Newcomb, and Wall, Plaintiff responded "I remember writing some grievances on some officers there at Centralia and I signed my name to it…I know for sure I did the one with the guy that was getting ignorant with me….I turned that one in and didn't get it back I remember waiting and waiting for it. I submitted another one and sent it in."   When asked if he received a response to his grievance about Defendant Wall before filing his Second Amended Complaint, Plaintiff stated "I don't remember if they did.  If I got anything back from them, I sent it to my attorney."

In response to questioning by his attorney, Plaintiff explained his understanding of the emergency grievance procedure.  When an inmate submits an emergency grievance, prison officials are supposed to "get to it sooner" and the inmate does not have "to go through the three steps."  If the Warden agrees that the grievance constitutes an emergency, then it is handled faster than a standard grievance.  Plaintiff then testified (in response to questioning by Wexford's

attorney) that the emergency grievance process "is supposed to be quicker but it doesn't always work that way. They've got a lot to do here." Regarding grievances #4043-12-21 and #4100-12-21, Plaintiff received responses "after a considerable amount of time" even though he marked them as emergencies. He did not know that the Warden had deemed them emergencies until they were returned to him. As soon as he received those grievances with the Warden's decision, he mailed them to the ARB.

Michelle Lively, a grievance officer at Pinckneyville, also testified. She did not respond to the grievances at issue in this case but had processed a grievance for Plaintiff in the month prior to the hearing. She testified that Plaintiff's grievance records reflect that on December 17, 2021, he submitted two grievances. One was deemed not an emergency and returned to Plaintiff, who sent it to his counselor and "that was the end." That grievance was given the number 4042-12-21. The other grievance was deemed an emergency and then later signed by the Warden on February 25, 2022. Ms. Lively explained that when a grievance is deemed an emergency, the inmate is notified so that he knows it is being handled as an emergency.

## Discussion

The PLRA required Plaintiff to exhaust the new claims in his amended complaint before submitting the proposed amended complaint to the court. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *Ford v. Johnson*, 362 F.3d 395, 398-99 (7th Cir. 2004) (regardless of what date the complaint is filed, the claim is "brought" for purposes of applying §1997e(a) on the date the complaint is submitted to the Court for consideration). Plaintiff filed his Motion for Leave and submitted the proposed second amended complaint to the Court on January 12, 2022 (Doc. 92). Plaintiff first submitted grievances related to the new claims in the Second Amended Complaint on December 17 and 20, 2021. All parties agree that he did not fully exhaust those grievances

before January 12, 2022.

Thus, the issue is whether administrative remedies were available to Plaintiff. The undisputed evidence shows that the grievance process was, in fact, available to him for grievances #4043-12-21 and #4100-12-21. Pinckneyville officials ultimately responded to those grievances and Plaintiff then appealed them to the ARB.[2] Plaintiff contends that because he waited 26 days (from the date he submitted #4043-12-21 until the date he submitted the proposed second amended complaint to the Court) with no response to his emergency grievances, administrative remedies were not available to him. The regulations are silent on the length of time prison officials should take to respond to an emergency grievance, only that it should be expedited. In general, grievances should be addressed by the prison within sixty days "when reasonably feasible *under the circumstances*." *Id*. §504.830(e) (emphasis added). However, the passage of 60 days does not "necessarily trigger the inmate's right to sue." *Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (*citing Ford*, 362 F.3d at 400).

To support his argument, Plaintiff cites multiple cases in which the Court found that the amount of time the inmate's emergency grievance(s) went unanswered indicated administrative remedies were unavailable to him/her. *Muhammed v. McAdory*, 214 Fed. Appx. 610, 611 (7th Cir. 2007); *Hampton v. Baldwin*, 18-cv-550-RJD, 2018 WL 5830730, *9 (S.D. Ill. Nov. 7, 2018); *Godfrey v. Harrington*, 13-cv-280, 2015 WL 1228829, **1-4 (S.D. Ill. Mar. 16, 2015); *Cox v. Lashbrook*,16-cv-1096, 2018 WL 4520272 *5 (S.D. Ill. Sept. 21, 2018). However, in each of those cases, the Warden *never* responded to the emergency grievance.[3] *See id*. These cases

---

[2] Viewing the evidence in the light most favorable to Plaintiff, the Court infers that Plaintiff timely submitted his grievances to the ARB and therefore the ARB erroneously found that decision grievance # 4100-12-21 was untimely appealed. This inference does not change the outcome of Defendants' Motion, however, because Plaintiff had already submitted his proposed second amended complaint before he sent grievance #4100-12-21 to the ARB.

[3] In another case cited by Plaintiff from this district, the inmate did not receive a response to an emergency grievance regarding hernia pain for eight days. *Reed v. Larson*, 18-cv-1182-JPG-GCS, 2019 WL 8063919, *4 (S.D. Ill. Sept. 26, 2019). On the eighth day, Plaintiff received the grievance back from the Warden, who had marked it as a non-

follow well-settled precedent that an inmate is only required to exhaust administrative remedies that are available to him, and remedies are unavailable when prison officials do not respond to his grievance.  *Lewis,* 300 F.3d at 833; *Reid*, 962 F.3d at 331.

Here, however, Plaintiff *did* receive a response.  The Seventh Circuit has been unwilling to create a bright line test and find that an inmate can file suit if he does not receive a response to a non-emergency grievance in 60 days.  *Ford*, 362 F.3d at 400.  The undersigned is likewise unwilling to find that after the passage of 26 days, Plaintiff could forego the exhaustion requirement and submit his proposed second amended complaint to the Court.   The emergency grievances (#4043-12-21 and #4100-12-21) that were not fully exhausted prior to January 12, 2022 pertain to Plaintiff's new claims in Counts III, IV, and V against Myers, Wexford, Moseley, Godoyo, Delgado, and Newcomb.  As Plaintiff did not fully exhaust any other grievances regarding these defendants, summary judgment is therefore appropriate in favor of Defendants Myers, Wexford, Moseley, Godoyo, Delgado, and Newcomb and Plaintiff's claims on Counts III, IV, and V.[4]

Regarding Defendant Wall, Plaintiff contends through counsel that he submitted a grievance dated December 17, 2021 that was marked as an emergency and describes the disciplinary hearing with Defendant Wall, but he never received a response to this grievance, which also refers to Defendant Moseley.  Plaintiff submitted this grievance to the Court (Doc.

---

emergency. *Id*. at *1.  In a Report and Recommendation, Magistrate Judge Gilbert C. Sison stated in *dicta* that "[g]iven the severity of [the inmate's] complaints, not receiving a response within eight days should render the grievance process unavailable."   *Id*. at *4.  Ultimately, the Court found that the defendant had waived its arguments regarding the emergency grievance.  *Reed v. Larson*, 18-cv-1182-JPG-GCS, 2019 WL 6769319, *3 (S.D. Ill. Dec. 12, 2019).

[4] Plaintiff makes general statements in a declaration signed on February 1, 2022 that grievances were not returned to him (Doc. 100-1, p. 5).  In responding to the Defendants' Motions for Summary Judgment, he does not contend that he submitted any grievance other than the ones discussed at the *Pavey* hearing and identified in the parties' briefings (Doc. 157, p. 10).  He argues that the grievance found at Doc. 157-1 is "related to the claim of retaliation" but that grievance only refers to Defendant Moseley and Wall.  For reasons described *infra*, the Court does not find the document found at Doc. 157-1 to be credible evidence.

157-1) with his Response to Defendants' Motion for Summary Judgment. However, at the *Pavey* hearing, Plaintiff did not seem to remember that grievance nor was he able to differentiate it from the other grievances. Grievance Officer Lively testified that Plaintiff did, in fact, submit a grievance on December 17, 2021, that he had marked as an emergency; it was deemed a non-emergency and reviewed by Plaintiff's counselor. Lively testified that grievance was given the number 4042-12-21. According to a list of grievances submitted by Defendants as part of Plaintiff's grievance records, grievance #4042-12-21 discussed Plaintiff's disciplinary ticket from Centralia (Doc. 152-2).

Plaintiff does not contend that grievance #4042-12-21 was the grievance he filed with the Court at Doc. 157-1. At the *Pavey* hearing, the undersigned asked Plaintiff about Doc. 157-1: specifically, how Plaintiff came to have a copy of it since it was purportedly never returned to him. Plaintiff testified "I make a copy and I keep a note so I know what date I sent it out, then if it don't get out then I'll rewrite it because sometimes they lose stuff and whatnot….I make a copy if possible but I don't always get to the library. Then I keep a handwritten copy, put the other one in the box, then I'll even write one and send it to my attorney if necessary."

When Plaintiff submitted the proposed second amended complaint on January 12, 2022, he did not know the name of the person who told him to plead guilty or he would be "lost in seg" (Doc. 92, p. 5; *see also* Doc. 100-1, ¶22). However, according to his exhaustion argument, on that same date Plaintiff was waiting on a response to a grievance (Doc. 157-1) that specifically named Chad Wall as the individual who read his disciplinary report to him and told him he would be "lost in seg for who knows how long" if he did not plead guilty. The grievance found at Doc. 157-1 is very specific and even includes the date and time of the October 2021 disciplinary hearing where Defendant Wall made the alleged statement. The Court observed Plaintiff's demeanor

during the *Pavey* hearing and considered his uncertain testimony regarding whether he ever wrote and received a response to a grievance that named Chad Wall in comparison to the very specific grievance Plaintiff submitted to the Court at Doc. 157-1.[5] The Court reaches the only logical conclusion: that Plaintiff wrote the grievance found at Doc. 157-1 at some point after January 12, 2022. Therefore, Plaintiff failed to exhaust his administrative remedies regarding Chad Wall prior to January 12, 2022.

Having found that Plaintiff failed to exhaust his administrative remedies in Counts III, IV, and V against Defendants Wexford, Myers, Moseley, Godoyo, Delgado, Newcomb, and Wall, the Court turns to Wexford's argument that Plaintiff also did not exhaust his administrative remedies against Wexford in Count II (an argument Wexford did not raise when it answered Plaintiff's First Amended Complaint). When Plaintiff submitted his original Complaint to the Court, he included a fully exhausted grievance dated September 16, 2019 that identified a "lack of a follow-up system for treating chronic diseases" at Centralia (Doc. 1-1, p. 23; *see also* Doc. 154-1, p. 1). While Plaintiff did not apparently know Wexford was the medical provider at Centralia in September 2019, this grievance sufficiently placed the prison on notice of Plaintiff's claim against Wexford that is now found in Count II of Plaintiff's Second Amended Complaint (and was also Count II in Plaintiff's First Amended Complaint). Wexford's Motion for Summary Judgment on Count II is DENIED.

Wexford also moved to dismiss Count V for failure to state a claim upon which relief could be granted (Doc. 113). This motion is DENIED AS MOOT because Plaintiff failed to exhaust his administrative remedies in Count V.

---

[5] "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility." *Pavey v. Conley*, 663 F. 3d. 899, 904 (7th Cir. 2011).

**Conclusion**

The Motion for Summary Judgment (Doc. 151) filed by Defendants Moseley, Delgado, Godoyo, Newcomb, and Wall is GRANTED. The Motion for Summary Judgment filed by Defendants Wexford and Myers (Doc. 153) is GRANTED IN PART AND DENIED IN PART.

Counts III, IV, and V of Plaintiff's Second Amended Complaint are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to enter judgment accordingly at the close of this case.

Wexford's Motion to Dismiss (Doc. 113) is DENIED AS MOOT. This case continues on the following claims in Plaintiff's Second Amended Complaint:

>    Count I:   Deliberate indifference by Nalewajka and Santos
>    Count II:  Deliberate indifference by Wexford

**IT IS SO ORDERED.**

**DATED: December 12, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**